

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

**WILLIAM J. MARTINI**
    **JUDGE**

## LETTER OPINION

February 10, 2011

Patricia M. Franklin
81 Halsey Street,
P.O. Box 32207
Newark, NJ 07102
    *(Attorney for Plaintiff)*

Som Ramrup
Special Assistant United States Attorney
c/o Social Security Administration
26 Federal Plaza, Room 3904
New York, NY 10278
    *(Attorney for Commissioner of Social Security)*

    RE:   *Green v. Astrue*
          Civil Action No. 10-2712 (WJM)

Dear Counsel:

Plaintiff Shirelle Green ("Green") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income and Disability Insurance Benefits. There was no oral argument. *See* Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.   Standard of Review and Analysis at the Administrative Level**

This Court has plenary review of the the Administrative Law Judge's ("ALJ") application of the law. *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations.  *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing 42 U.S. § 405(g)).

At the administrative level, a five-step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. At Step One, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires at Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits and the analysis ends; if not, the ALJ moves on to Step Four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At Step Four, the ALJ decides whether, despite any severe impairment(s), the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec. Admin.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

## II.   Factual and Procedural Background

Green applied for benefits in December 2006, her application was denied, and she requested reconsideration and a hearing before an ALJ in April 2008. (Administrative Transcript, hereinafter "Tr.", 11.) On June 10, 2009, her hearing was held before ALJ Dennis O'Leary, and on July 10, 2009, the ALJ denied Green's claims for benefits, finding her nonexertional limits had little or no effect on her ability to work. (*Id.* at 19-20.) The Appeals Council denied Green's request for review on January 9, 2010. (*Id.* at 4-7.)

Green was 42 years old at the time of the ALJ's decision. (*Id.* at 17.) She has completed the 12th grade and has had no specialized vocational training. (*Id.* at 27-28.) From 1997 through 2005 she worked part-time as a laundry operator at a laundromat. (*Id.*) This was her last job. (*Id.*) Green suffers from a seizure disorder and suffers two or three seizures every month each lasting between ten and thirty minutes. (*Id.* at 17-18, 293.) She takes several medications to control her disorder, but there is conflicting evidence as to whether she takes those medications regularly; she testifies that she takes them as prescribed, but medical records from hospital visits post-seizure suggest that she suffered seizures in part because she failed to take her medication as prescribed. (*Id.* at 16-17.) She also suffers from affected disorder or depression. (*Id.* at 13.) While she believes she may have suffered a stroke in 2006, and her primary care physician agreed, subsequent medical tests did not reveal any evidence of it. (*Id.* at 13-14.)

Psychiatrical evaluations found Green had "some features of depression, which appear to be a reaction to her medical condition" and that Green's disorder mildly limited her daily living and social functioning and moderately limited her concentration. (*Id.* at 290-309.) A neurological evaluation showed no impairments. (*Id.* at 314-15.) A mental residual functional capacity assessment found Green had some moderate limitations but no marked limitations and was able to "understand, remember and execute simple instructions" and "respond, relate, and adapt adequately." (*Id.* at 310-13.) A physical residual functional capacity assessment found that Green's only work limitations were avoidance of heights, machinery, and other hazards because these might be especially dangerous if she were to suffer a seizure nearby. (*Id.* at 316-23.) An evaluation by her primary care physician alleged symptoms of seizure disorder, stroke, high blood pressure, bipolar disorder, and found limitations in standing, walking, climbing, stooping, bending, and lifting. (*Id.* at 324-30.)

The ALJ considered all of these evaluations in his decision, although he discounted portions of the evaluation by Green's primary care physician where that evaluation deviated from other medical evidence and where the physician render an opinion on matters reserved for the Commissioner. (*Id.* at 14.) The ALJ found that Green had two severe impairments: a seizure disorder and depression. (*Id.* at 13.) But at Step Three, the ALJ found that Green's impairments could not meet the criteria for any listing under the regulations. (*Id.* at 14-17.) At Step Five, the ALJ found that jobs existed in significant numbers in the national economy that Green could perform and concluded that Green was not disabled. (*Id.* at 19-20.)

### III.  Legal Analysis

Although Green's brief identifies only two "issues," she challenges the decision under five analytically distinct arguments. The Court will address each in turn.

####   A.   The ALJ established a record with explanation sufficient to allow meaningful review of the Step Three determinations.

Green first argues that the ALJ's Step Three analysis is not supported by substantial evidence because it fails to meet the minimum requirements articulated in *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). In *Burnett*, the Court of Appeals for the Third Circuit held that the ALJ "must set forth the reasons for his decision," and further held that the ALJ's Step Three analysis – which consisted of one sentence that did not discuss any evidence – was "hopelessly inadequate." *Id.* But here, the ALJ's decision sets forth sufficient explanation and support for his Step Three analysis. He identifies the listing and the criteria he used to evaluate Green's impairment, and he methodically reviews and discusses each prong of the criteria, incorporating medical and testimonial evidence throughout. (Tr. at 14-15.) This is a far cry from the

3

one-sentence conclusion made by the ALJ in *Burnett* or the three-sentence statement from *Schwartz v. Halter*, 134 F. Supp. 2d 640, 659 (E.D. Pa. 2001), on which Green also relies as an example of deficient Step Three analysis. Here, the ALJ has provided enough reasoning to permit "meaningful review" by this Court and has therefore satisfied *Burnett*. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (holding *Burnett* satisfied where ALJ's decision was sufficient to allow "meaningful review").

### B. The ALJ was not required to compare Green's seizure impairment to Listings 11.02 and 11.03 as the ALJ determined that both listings were unavailable to Green because of her failure to take her medications as prescribed.

Green next argues that the ALJ's failure to compare her seizure disorder to Listings 11.02 and 11.03 is reversible error. But the ALJ's decision makes clear that Green cannot meet the criteria of Listings 11.02 and 11.03 because of her failure to follow prescribed treatment for her seizure disorder and her substance abuse, as shown by various medical records from hospital visitations and other evidence. (Tr. at 16,18.) Therefore, the ALJ did not also need to explicitly consider those listings at Step Three in order for his decision to be supported by substantial evidence. *See Diaz v. Comm'r of Social Sec.*, 89 F. App'x 323, 327 (3d. Cir. 2004) (holding ALJ did not need to explicitly name each specific listing considered during Step Three analysis where record evidence shows listing was unavailable or ALJ determined that petitioner failed to meet the criteria for coverage under listing).

### C. The ALJ did not err by failing to consider Green's impairments in combination.

Green argues that the ALJ erred by failing to consider Green's impairments in combination at Step Three. In fact, the ALJ did *not* explicitly analyze Green's impairments in combination at Step Three and instead focused on her depression. But the ALJ *did* discuss Green's other impairment, her seizure disorder, at length. (Tr. at 16-18.) And because the ALJ had already determined that Listings 11.02 and 11.03 were unavailable to Green, her combined impairments would have to had met or equaled Listing 12.04. Plaintiff fails to show any reason or evidence suggesting that Green's seizure disorder would have somehow exacerbated the limitations created by her depression; in fact, medical evaluations suggest her depression resulted from her seizure disorder. (*Id.* at 15, 294.) In any event, the full extent of the limitations created by her depression were thoroughly reviewed in the medical record and considered by the ALJ in his decision. (*Id.* at 14-15.) The decision as a whole shows that the ALJ did not improperly fail to consider Green's impairments in combination. *See Hrbek v. Astrue*, No. 09-2160, 2010 WL 3515583, at *7 (D.N.J. Aug. 31, 2010).

**D.    The ALJ's reliance on SSR 85-15 during Step Five was appropriate because SSR 85-15 is "crystal clear" as to the way in which Green's nonexertional limitations impact her ability to work.**

Green argues that the ALJ's reliance on a Social Security Ruling ("SSR") at Step Five was improper. But during Step Five analysis, the Secretary may "rely on an SSR as a replacement for a vocational expert" if it is "crystal-clear that the SSR is probative as to the way in which the nonexertional limitations impact the ability to work, and thus, the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005). Green's nonexertional limitations are entirely environmental and result from her seizure disorder. (Tr. at 316-23.) SSR 85-15, on which the ALJ relies in his decision, could not be more clear on the way in which these nonexertional limitations impact her ability to work: "A person with a seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction *does not have a significant effect on work that exist at all exertional levels.*" (emphasis added). The ALJ committed no error by relying on SSR 85-15 here.

**E.    Green was not entitled to notice under *Sykes v. Apfel* because an agency rulemaking had already established the fact that the nonexertional limitations faced by Green would not diminish her occupational base.**

Under *Sykes v. Apfel*, a claimant is entitled to notice of an ALJ's decision to take official notice of a fact regarding Step Five analysis rather than rely on expert testimony. 228 F.3d 259, 261 (3d Cir. 2000). But *Sykes* does not apply where, as here, the ALJ specifically refers to SSR 85-15, which adequately and publicly establishes the degree of diminution in the occupational base. *See Allen*, 417 F.3d at 403-04 (holding ALJ's reliance on SSR 85-15 was proper and noting "whereas *Sykes* spoke to the situation in which rulemaking regarding the degree of diminution in the occupational base was lacking, here the ALJ specifically referred to rule SSR 85-15."). Thus, contrary to Green's argument, nothing required the ALJ to either take testimony from a vocational expert or, failing that, notify Green that he intended to take official notice regarding any particular fact.

## IV.    Conclusion and Recommendation

For the foregoing reasons, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**